UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DORCAS-COTHY KABASELE, an individual,[1] | No. 2:21-cv-01639 WBS CKD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT[2] |
| ULTA SALON, COSMETICS & FRAGRANCE, INC.; and DOES 1-100, inclusive, | |
| Defendant. | |

----oo0oo----

Plaintiff Dorcas-Cothy Kabasele, individually and on behalf of similarly situated individuals, brought this putative class action against defendant Ulta Salon, Cosmetics, & Fragrance, Inc. ("Ulta"), alleging violations of California wage

---

[1]    Although the caption on the operative complaint refers to plaintiff only as "an individual," plaintiff asserts claims both individually and on behalf of similarly situated Ulta employees.

[2]    The motion is decided on the papers without further oral argument pursuant to Local Rule 230(g).

1

1  and hour laws. (See Third Am. Compl. ("TAC") (Docket No. 23).)

2  Before the court is plaintiff's unopposed motion for preliminary

3  approval of a class action settlement. (See Mot. for Prelim.

4  Approval ("Mot.") (Docket No. 34); Def.'s Notice of Non-Opp'n

5  (Docket No. 36).)

6  I.   Background and Proposed Settlement

7         According to the allegations of the Third Amended

8  Complaint, defendant Ulta employed plaintiff and other proposed

9  class members as hourly-paid or non-exempt employees. (See TAC ¶

10  10.) Plaintiff brought this action for (1) failure to pay

11  minimum wages; (2) failure to pay overtime wages; (3) failure to

12  provide meal breaks; (4) failure to provide rest breaks; (5)

13  failure to pay sick pay; (6) failure to furnish accurate itemized

14  wage statements; (7) failure to pay wages due at end of

15  employment; (8) failure to indemnify all necessary business

16  expenditures; (9) violation of California's Unfair Competition

17  Law, California Business & Professions Code § 17200 et seq.; and

18  (10) penalties under California's Private Attorneys General Act

19  of 2004 ("PAGA"), Cal. Lab. Code § 2698 et seq. (See TAC.)

20         This is one of four actions against defendant Ulta

21  covering similar class and PAGA claims. The other actions are

22  Gonzalez v. Ulta Salon Cosmetics & Fragrance, Inc., No. 2:22-cv-

23  00363 AB RAO (C.D. Cal.), a federal class and PAGA action;

24  Arellano v. Ulta Salon, Cosmetics and Fragrance, Inc., No. 5:22-

25  cv-00639 JGB KK (C.D. Cal.), a federal class action; and Arellano

26  v. Ulta Salon, Cosmetics and Fragrance, Inc., No. CIVSB2209151

27  (San Bernardino Super. Ct.), a state PAGA action.

28         The proposed settlement would dispose of all four

1 actions.[3]  All parties agreed to seek settlement approval only in
2 this action; once the settlement receives final approval in this
3 action and all class payments are distributed, counsel in the
4 Gonzalez and Arellano actions (state and federal) will
5 voluntarily dismiss their cases.  (See Settlement Agreement
6 (Docket No. 34-2 at 18-53) ¶ 9.8.)

7          The putative class consists of all current and former
8 hourly-paid or non-exempt employees of defendant statewide who
9 worked for Ulta between October 12, 2019 and November 8, 2022.
10 (Id. ¶ 1.6.)  There are approximately 18,711 individuals in the
11 putative class.  (Def.'s Suppl. Br. (Docket No. 42) at 8.)  The
12 parties propose a gross settlement amount of $1,500,000, which
13 includes the following: (1) $5,000 incentive awards for the three
14 lead plaintiffs and $500 for each remaining named plaintiff, for
15 a total of $27,000 in plaintiff incentive awards[4]; (2) maximum
16 attorneys' fees of $500,000, or 33.33% of the gross settlement
17 amount; (3) settlement administration costs of approximately
18 $65,000; and (4) $50,000 for PAGA penalties, of which 75% (i.e.,
19 $37,500) will be distributed to the Labor and Workforce
20

21 _____
          [3]   Plaintiff's motion sought leave to amend the operative
22 complaint to join the named plaintiffs from these other actions.
Because the court denies the motion for preliminary approval,
23 leave to amend the complaint is denied at this time.  Plaintiff
should include a renewed request to amend the complaint in any
24 future motion for preliminary approval.

25          [4]   The motion for preliminary approval originally
indicated that the incentive awards would total $28,500.  The
26 parties later indicated that they will no longer seek to have
three of the named plaintiffs from the Gonzalez action designated
27 as class representatives due to non-responsiveness.  (See Docket
No. 38.)  This would decrease the incentive awards by $500 each,
28 or $1,500, resulting in total incentive awards of $27,000.

1   Development Agency ("LWDA") and the remaining 25% will be

2   distributed to individual class members.  (See Settlement

3   Agreement ¶¶ 1.5, 1.13, 1.16, 1.21, 1.31.)  After deduction of

4   the incentive awards, fees, costs, and the LWDA's share of

5   penalties, the net settlement amount would be approximately

6   $870,500, to be distributed to class members pro rata based on

7   their number workweeks during the class period.  (See id.)

8        The settlement would release defendant from any and all

9   class claims that were pled or could have been pled based on the

10  factual allegations in the operative or prior complaints, and any

11  and all PAGA claims for civil penalties premised on the released

12  class claims.  (See id. ¶¶ 1.26, 1.27.)

13       A hearing on this unopposed motion for preliminary

14  approval was set for March 6, 2023.  Due to what was said to be

15  an error in the briefing identified by counsel during the

16  hearing, the court declined to hear further oral argument at that

17  time.  The court subsequently issued an order explaining its

18  evaluation of the initial briefing and ordered the parties to

19  submit supplemental briefing.  See Kabasele v. Ulta Salon,

20  Cosmetics, & Fragrance, Inc., No. 2:21-cv-01639 WBS CKD, 2023 WL

21  2842973, at *2 (E.D. Cal. Mar. 14, 2023).

22  II.  Legal Standards

23       Federal Rule of Civil Procedure 23(e) provides that

24  "[t]he claims, issues, or defenses of a certified class may be

25  settled . . . only with the court's approval."  Fed. R. Civ. P.

26  23(e).  The approval of a class action settlement takes place in

27  two stages.  In the first stage, "the court preliminarily

28  approves the settlement pending a fairness hearing, temporarily

1  certifies a settlement class, and authorizes notice to the

2  class." Ontiveros v. Zamora, No. 2:08-cv-567 WBS DAD, 2014 WL

3  3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the

4  court will entertain class members' objections to (1) treating

5  the litigation as a class action and/or (2) the terms of the

6  settlement agreement at the fairness hearing.  Id.

7      At the preliminary approval stage, the district court

8  must "carefully consider 'whether a proposed settlement is

9  fundamentally fair, adequate, and reasonable,' recognizing that

10  '[i]t is the settlement taken as a whole, rather than the

11  individual component parts, that must be examined for overall

12  fairness . . . .'" Staton, 327 F.3d at 952 (quoting Hanlon v.

13  Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)), overruled

14  on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338

15  (2011).  District courts "review and approve" settlement of PAGA

16  claims under a similar standard.  See Cal. Lab. Code §

17  2669(k)(2); Jordan v. NCI Grp., Inc., No. cv-161701 JVS SP, 2018

18  WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (collecting cases);

19  Ramirez v. Benito Valley Farms, LLC, No. 16-cv-04708 LHK, 2017 WL

20  3670794, at *2 (N.D. Cal. Aug. 25, 2017).

21      At the preliminary approval stage, "the court need only

22  determine whether the proposed settlement is within the range of

23  possible approval," Murillo, 266 F.R.D. at 479 (quoting Gautreaux

24  v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)), and resolve

25  any "glaring deficiencies" in the settlement agreement before

26  authorizing notice to class members, Ontiveros, 2014 WL 3057506,

27  at *12 (citing Murillo, 266 F.R.D. at 478).  This generally

28  requires consideration of "whether the proposed settlement

1   discloses grounds to doubt its fairness or other obvious

2   deficiencies, such as unduly preferential treatment of class

3   representatives or segments of the class, or excessive

4   compensation of attorneys." Murillo, 266 F.R.D. at 479 (quoting

5   West v. Circle K Stores, Inc., No. 2:04-cv-438 WBS GGH, 2006 WL

6   1652598, at *11-12 (E.D. Cal. June 13, 2006)).

7        "Courts have long recognized that 'settlement class

8   actions present unique due process concerns for absent class

9   members.'" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d

10  935, 946 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1026).

11  Accordingly, settlements reached prior to formal class

12  certification "must withstand an even higher level of scrutiny .

13  . . before securing the court's approval as fair." Id.

14  III. Discussion

15       "In determining whether the amount offered in

16  settlement is fair, the Ninth Circuit has suggested that the

17  Court compare the settlement amount to the parties' 'estimates of

18  the maximum amount of damages recoverable in a successful

19  litigation.'" Litty v. Merrill Lynch & Co., No. 14-cv-0425 PA

20  PJW, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting In

21  re: Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir.

22  2000), as amended (June 19, 2000)); see also Almanzar v. Home

23  Depot U.S.A., Inc., No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *11

24  (E.D. Cal. July 19, 2022) (citing Rodriguez v. W. Publ'g Corp.,

25  563 F.3d 948, 964 (9th Cir. 2009)) ("In determining whether the

26  amount offered is fair and reasonable, courts compare the

27  proposed settlement to the best possible outcome for the class.")

28       Plaintiff's counsel estimates that the "maximum"

6

possible value of the claims is $26,379,927.  (See Decl. of
Robert J. Wasserman ("Wassmerman Decl.") (Docket No. 34-2) ¶ 13.)
This includes $8,950,000 in statutory PAGA penalties.[5]  Based on
the defendant's arguments and potential defenses, plaintiff's
counsel provides a discounted, "realistic" value of the claims.
Counsel discounts the minimum wage, overtime, and business
reimbursement claims by 50%; and the unpaid meal and rest break
premium, wage statement, and waiting time claims by 75%.  (Id. ¶
27.)  This results in a total of $7,474,362 in "realistic"
recovery.  (See id.)

The gross settlement amount of $1,500,000 constitutes
5.7% of the projected "maximum" possible recovery.[6]  Even looking
solely at the non-PAGA portion of the settlement, the gross
settlement amount constitutes 8.3% of the projected maximum
recovery for the underlying wage and hour claims.[7]  Both
percentages are lower than is typically approved.  Kabasele, 2023
WL 2842973, at *2 (collecting cases).[8]

---

[5]    Based on these figures, the maximum possible non-PAGA
recovery is $17,429,927.

[6]    This figure results from $1,500,000 divided by
$26,379,927.

[7]    This figure results from $1,450,000 divided by
$17,429,927.

[8]    See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-00062
DAD EPG, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022)
(collecting cases) (noting that settlement constituting 5.8% of
maximum exposure was "below the general range of percentage
recoveries that California courts--including this one--have found
to be reasonable," but granting preliminary approval because "a
larger recovery . . . would likely not be possible due to
defendant's financial condition"); Almanzar v. Home Depot U.S.A.,
Inc., No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *12 (E.D. Cal.

1    Due to the combination of what appeared to be a

2 relatively low settlement amount and the conclusory reasoning

3 offered in plaintiff's counsel's motion, the court ordered the

4 parties to submit supplemental briefing.  (See Docket No. 40.)

5 The court made clear that the original motion was deficient not

6 because the terms of the settlement were inherently unfair, but

7 because the information offered by counsel did not allow the

8 court to adequately assess the settlement.  Unfortunately,

9 counsel has failed to cure these defects despite the opportunity

10 to submit supplemental briefing.

11    As stated above, the court's task in evaluating a

12 settlement's terms includes comparing the settlement amount with

13 "estimates of the maximum amount of damages recoverable in a

14

15 July 19, 2022) (denying preliminary approval because proposed
settlement including 8% of projected value of non-PAGA wage and
16 hour claims was below the range typically approved and plaintiff
needed to "better explain the reasonableness" of the proposed
17 recovery); Hunt v. VEP Healthcare, Inc., No. 16-cv-04790 VC, 2017
WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) (denying preliminary
18 approval of settlement constituting 4.3% of maximum possible
exposure, noting that "[i]f a defendant is to receive a discount
19 of this magnitude, there must be good reasons why," which "must
be explained thoroughly at the preliminary approval stage . . .
20 to allow the district court to carefully evaluate the strength of
the claims, the risks of litigating those claims all the way
21 through, and the value of the relief each class member will
receive from the settlement"); O'Connor v. Uber Techs., Inc., 201
22 F. Supp. 3d 1110, 1129, 1132, 1132 n.18, 1135 (N.D. Cal. 2016)
(collecting cases) (denying preliminary approval of settlement
23 constituting 5% of the value of all claims and 10% of the value
of non-PAGA wage and hour claims, which was on "the low end of
24 reasonable recovery"); Balderas v. Massage Envy Franchising, LLC,
No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21,
25 2014) (collecting cases) (because gross settlement amount
constituting 8% of the maximum possible recovery was "especially
26 low," the court stated that counsel needed to provide additional
explanation for the settlement amount at final approval).
27

28

1    successful litigation."  See <u>In re: Mego Fin. Corp. Sec. Litig.</u>,

2    213 F.3d at 459.  Based on the parties' supplemental briefs, the

3    fatal defect here seems to be that plaintiff's motion proffered a

4    "grossly inflated" estimate of the maximum value of the claims

5    that was conceived purely for settlement negotiation purposes.

6    (<u>See</u> Def.'s Suppl. Br. at 17; Pl.'s Suppl. Br. (Docket No. 41) at

7    5.)  Defendant -- which does not oppose the motion -- candidly

8    states that many of the assumptions made by plaintiff's counsel

9    in reaching the "maximum" estimate are "not based on any

10    evidentiary support," leading to a figure that far overstates the

11    value of the claims.  (<u>See</u> Def.'s Suppl. Br. at 28.)  It appears

12    that even if plaintiff was completely successful in litigating

13    the case through class certification and trial, it would be

14    <u>impossible</u> for her to recover the "maximum" amount suggested by

15    plaintiff's counsel.  This "maximum" estimate is therefore

16    useless to the court in evaluating the settlement.

17         In trying to justify this figure, plaintiff's

18    supplemental brief repeatedly underlines, bolds, and italicizes

19    the word "maximum" as if to suggest the court somehow overlooked

20    or misunderstood this descriptor as used in plaintiff's motion.

21    The court understands the meaning of the word "maximum," but

22    questions whether counsel understands how that concept is

23    appropriately applied at this stage of the litigation.  "Maximum"

24    refers to the <u>factually grounded</u> value of the claims that

25    plaintiff could <u>actually</u> recover if successful in litigating the

26    case.  Counsel has clearly failed to provide such an estimate.

27         It is possible that the "realistic" estimate offered by

28    plaintiff's counsel is a more accurate representation of the true

1   value of the claims that could be recovered in successful

2   litigation.  However, the parties have provided the court no

3   means of making this determination.  The "realistic" estimate

4   appears to have been calculated by merely taking a percentage

5   discount off the purported "maximum" estimate.  An estimate of

6   the <u>true</u> value of plaintiff's claims -- whether styled as

7   "maximum" or a "realistic" value -- must be calculated based on

8   the facts known to the parties, including the number of putative

9   class members subject to each type of violation and the frequency

10  of violations against those individuals.

11          The court appreciates that defendant's counsel has made

12  a greater effort than plaintiff's counsel to explain the relevant

13  facts to the court.  Defendant analyzes the multiple flawed

14  assumptions that led to the "grossly inflated" estimate of the

15  "maximum" value offered by plaintiff.  If defendant had taken its

16  analysis one step further and provided an accurate estimate of

17  the true value of the claims, the court might have been able to

18  adequately assess the settlement for purposes of preliminary

19  approval.

20          As the court emphasized in its prior order,

21  "'[b]alancing the class's potential recovery against the amount

22  offered in settlement is perhaps the most important factor to

23  consider in preliminary approval, not a hollow exercise in which

24  the Court blindly accepts the parties' unsupported assertions.'"

25  See <u>Kabasele</u>, 2023 WL 2842973, at *2 (quoting <u>Beltran v. Olam</u>

26  <u>Spices & Vegetables, Inc.</u>, No. 1:18-cv-01676 SAB, 2020 WL

27  2850211, at *8 (E.D. Cal. June 2, 2020)).  Here, the court must

28  conclude that plaintiff has failed to adequately establish that

1  the proposed settlement is fair, reasonable, and adequate such

2  that preliminary approval is warranted.  Accordingly, the motion

3  for preliminary approval will be denied.  Any future motion for

4  preliminary approval and seeking class certification should,

5  among other things, provide sufficient factual background to

6  enable the court to meaningfully evaluate the settlement.

7          IT IS THEREFORE ORDERED that plaintiff's motion for

8  preliminary approval of the class action and PAGA settlement

9  (Docket No. 34) be, and hereby is, DENIED WITHOUT PREJUDICE to

10 submission of a new motion consistent with the discussion in this

11 Order.

12 Dated:  April 12, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11