1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  DORCAS-COTHY KABASELE,              No. 2:21-cv-1639 WBS CKD
    an individual,[1]
13
                                        _____
14            Plaintiff,                MEMORANDUM AND ORDER RE:
                                        PLAINTIFF'S MOTION FOR
15       v.                             PRELIMINARY APPROVAL OF CLASS
                                        ACTION AND PAGA SETTLEMENT
16  ULTA SALON, COSMETICS &             _____
    FRAGRANCE, INC.; and DOES 1-100,
17  inclusive,

18            Defendant.

19                         ----oo0oo----

20        Plaintiff Dorcas-Cothy Kabasele, individually and on

21  behalf of similarly situated individuals, brought this putative

22  class action against defendant Ulta Salon, Cosmetics, &

23  Fragrance, Inc. ("Ulta"), alleging violations of California wage

24  and hour laws.  (See Third Am. Compl. ("TAC") (Docket No. 23).)

25

26  ─────────────────
          [1]    Although the caption on the operative complaint refers
27  to plaintiff only as "an individual," plaintiff asserts claims
    both individually and on behalf of similarly situated Ulta
28  employees.

                               1

Before the court is plaintiff's unopposed renewed motion for preliminary approval of a class action settlement.  (See Mot. for Prelim. Approval ("Mot.") (Docket No. 44); Def.'s Notice of Non-Opp'n (Docket No. 45).)

I.    Background and Proposed Settlement

        Defendant Ulta employed plaintiff and other proposed class members as hourly-paid or non-exempt employees.  (See TAC ¶ 10.)  Plaintiff brought this action for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal breaks; (4) failure to provide rest breaks; (5) failure to pay sick pay; (6) failure to furnish accurate itemized wage statements; (7) failure to pay wages due at end of employment; (8) failure to indemnify all necessary business expenditures; (9) violation of California's Unfair Competition Law, California Business & Professions Code § 17200 et seq.; and (10) penalties under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 et seq.  (See TAC.)

        This is one of four actions against defendant Ulta covering similar class and PAGA claims.  The other actions are Gonzalez v. Ulta Salon Cosmetics & Fragrance, Inc., No. 2:22-cv-00363 AB RAO (C.D. Cal.), a federal class and PAGA action; Arellano v. Ulta Salon, Cosmetics and Fragrance, Inc., No. 5:22-cv-00639 JGB KK (C.D. Cal.), a federal class action; and Arellano v. Ulta Salon, Cosmetics and Fragrance, Inc., No. CIVSB2209151 (San Bernardino Super. Ct.), a state PAGA action.

        The proposed settlement disposes of all four actions.[2]

_____

        [2]   Plaintiff's motion seeks leave to amend the operative complaint to join the named plaintiffs from these other actions.

1  All parties agreed to seek settlement approval only in this

2  action; once the settlement receives final approval in this

3  action and all class payments are distributed, counsel in the

4  Gonzalez and Arellano actions (state and federal) will

5  voluntarily dismiss their cases.  (See Settlement Agreement

6  (Docket No. 34-2 at 18-53) ¶ 9.8.)

7          The putative class consists of all current and former

8  hourly-paid or non-exempt employees who worked for defendant Ulta

9  within California between October 12, 2019 and November 8, 2022.

10  (Id. ¶ 1.6.)  There are approximately 18,711 individuals in the

11  putative class.  (Mot. at 1; Decl. of Robert J. Wasserman

12  ("Wasserman Decl.") ¶ 15.)  The parties propose a gross

13  settlement amount of $1,500,000, which covers all four actions

14  and includes the following: (1) $5,000 incentive awards for the

15  three lead plaintiffs and $500 for each remaining named

16  plaintiff, for a total of $27,000 in plaintiff incentive awards;

17  (2) maximum attorneys' fees of $500,000, or 33.33% of the gross

18  settlement amount; (3) settlement administration costs of

19  approximately $65,000; and (4) $50,000 for PAGA penalties, of

20  which 75% (i.e., $37,500) will be distributed to the Labor and

21  Workforce Development Agency ("LWDA") and the remaining 25% will

22  be distributed to individual aggrieved employees.  (See

23  Settlement Agreement ¶¶ 1.5, 1.13, 1.16, 1.21, 1.31; Mot. at 7-

24  9.)  After deduction of the incentive awards, fees, costs, and

25  the LWDA's share of penalties, the net settlement amount would be

26  approximately $870,500, to be distributed to class members pro

27

28  The court will grant leave to amend the operative complaint.

3

1  rata based on their number workweeks during the class period.

2  (See id.)

3  The settlement would release defendant from any and all

4  class claims that were pled or could have been pled based on the

5  factual allegations in the operative or prior complaints, and any

6  and all PAGA claims for civil penalties premised on the released

7  class claims.  (See id. ¶¶ 1.26, 1.27.)

8  A hearing on the first motion for preliminary approval

9  was set for March 6, 2023.  Due to an error in the briefing

10  identified by counsel during the hearing, the court declined to

11  hear further oral argument at that time.  The court subsequently

12  issued an order explaining its evaluation of the initial briefing

13  and ordered the parties to submit supplemental briefing.  See

14  Kabasele v. Ulta Salon, Cosmetics, & Fragrance, Inc., No. 2:21-

15  cv-01639 WBS CKD, 2023 WL 2842973, at *2 (E.D. Cal. Mar. 14,

16  2023).  Following supplemental briefing, the court denied the

17  motion, indicating that the parties needed to provide adequate

18  factual support for the figures and calculations they relied upon

19  in arguing that the settlement was fair and adequate.  (See

20  Docket No. 43.)

21  II.  Discussion

22  Federal Rule of Civil Procedure 23(e) provides that

23  "[t]he claims, issues, or defenses of a certified class may be

24  settled . . . only with the court's approval."  Fed. R. Civ. P.

25  23(e).  This Order is the first step in that process and analyzes

26  only whether the proposed class action settlement deserves

27  preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266

28  F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  Preliminary

4

1  approval authorizes the parties to give notice to putative class

2  members of the settlement agreement and lays the groundwork for a

3  future fairness hearing, at which the court will hear objections

4  to (1) the treatment of this litigation as a class action and (2)

5  the terms of the settlement.  See id.; Diaz v. Tr. Territory of

6  Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).  The court

7  will reach a final determination as to whether the parties should

8  be allowed to settle the class action on their proposed terms

9  after that hearing.

10         Where the parties reach a settlement agreement prior to

11  class certification, the court must first assess whether a class

12  exists.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

13  "Such attention is of vital importance, for a court asked to

14  certify a settlement class will lack the opportunity, present

15  when a case is litigated, to adjust the class, informed by the

16  proceedings as they unfold."  Id. (quoting Amchem Prods. Inc. v.

17  Windsor, 521 U.S. 591, 620 (1997)).  The parties cannot "agree to

18  certify a class that clearly leaves any one requirement

19  unfulfilled," and consequently the court cannot blindly rely on

20  the fact that the parties have stipulated that a class exists for

21  purposes of settlement.  See Amchem, 521 U.S. at 621-22.

22         "Second, the district court must carefully consider

23  'whether a proposed settlement is fundamentally fair, adequate,

24  and reasonable,' recognizing that '[i]t is the settlement taken

25  as a whole, rather than the individual component parts, that must

26  be examined for overall fairness . . . .'"  Staton, 327 F.3d at

27  952 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

28  Cir. 1998)), overruled on other grounds by Wal-Mart Stores, Inc.

1  v. Dukes, 564 U.S. 338 (2011).  District courts "review and

2  approve" settlement of PAGA claims under a similar standard.  See

3  Cal. Lab. Code § 2669(k)(2); Jordan v. NCI Grp., Inc., No. cv-

4  161701 JVS SP, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)

5  (collecting cases); Ramirez v. Benito Valley Farms, LLC, No. 16-

6  cv-04708 LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017).

7       A.    Class Certification

8            The putative class consists of all current and former

9  hourly-paid or non-exempt employees who worked for defendant Ulta

10  within California between October 12, 2019 and November 8, 2022.[3]

11  (Settlement Agreement ¶ 1.6.)

12            To be certified, the putative class must satisfy the

13  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

14  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

15            1.    Rule 23(a)

16            Rule 23(a) restricts class actions to cases where: "(1)

17  the class is so numerous that joinder of all members is

18  impracticable [numerosity]; (2) there are questions of law or

19  fact common to the class [commonality]; (3) the claims or

20  defenses of the representative parties are typical of the claims

21  or defenses of the class [typicality]; and (4) the representative

22  parties will fairly and adequately protect the interests of the

23  class [adequacy of representation]."  See Fed. R. Civ. P. 23(a).

24            a.    Numerosity

25            "A proposed class of at least forty members

26

27       [3]    For purposes of the PAGA claim, the relevant time
    period is August 24, 2020 through November 8, 2022 ("PAGA
28  Period").

6

presumptively satisfies the numerosity requirement." <u>Avilez v. Pinkerton Gov't Servs.</u>, 286 F.R.D. 450, 456 (C.D. Cal. 2012), <u>vacated on other grounds</u>, 596 F. App'x 579 (9th Cir. 2015).  <u>See also, e.g.</u>, <u>Collins v. Cargill Meat Sols. Corp.</u>, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").  Here, plaintiff estimates that the proposed class contains 18,711 members.  (<u>See</u> Mot. at 1; Wasserman Decl. ¶ 15.)  This more than satisfies the numerosity requirement.

b.   <u>Commonality</u>

Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart Stores</u>, 564 U.S. at 350.  "[A]ll questions of fact and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019.  "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 544 (9th Cir. 2013) (internal citation and quotation marks omitted).

Here, the claims implicate common questions of law and fact because they are premised on policies and practices that allegedly applied to all class members equally.  All class members were hourly-paid or non-exempt employees who worked for

7

defendant Ulta within California between October 12, 2019 and
November 8, 2022.  (See Settlement Agreement ¶ 1.6.)  As a
result, the class members share several common factual questions
surrounding the existence of alleged wage and hour policies
(including, inter alia, failure to pay minimum wages, failure to
provide overtime compensation, and deprivation of meal and rest
periods), and several common legal questions concerning whether
said policies violated California law.  (See TAC ¶¶ 55-111.)

Generally, "challeng[ing] a policy common to the class
as a whole creates a common question whose answer is apt to drive
the resolution of the litigation."  Ontiveros v. Zamora, No.
2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July 7,
2014).  Even if individual members of the class will be entitled
to different amounts of damages because, for instance, they were
denied fewer meal and rest breaks than other employees or had
their time rounded down less often than other employees, "the
presence of individual damages cannot, by itself, defeat class
certification."  Leyva, 716 F.3d at 514 (quoting Wal-Mart Stores,
564 U.S. at 362).  Accordingly, these common questions of law and
fact satisfy the commonality requirement.

c.   Typicality

Typicality requires that named plaintiffs have claims
"reasonably coextensive with those of absent class members," but
their claims do not have to be "substantially identical."
Hanlon, 150 F.3d at 1020.  The test for typicality "is whether
other members have the same or similar injury, whether the action
is based on conduct which is not unique to the named plaintiffs,
and whether other class members have been injured by the same

1  course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497,

2  508 (9th Cir. 1992) (citation omitted).

3          The named plaintiff and the other class members were

4  all hourly-paid or non-exempt employees of defendant.  Plaintiff

5  and the other class members were all allegedly subject to the

6  same policies and practices in question, including failure to pay

7  minimum wages, failure to provide overtime compensation, and

8  deprivation of meal and rest periods.  Although the facts might

9  differ for individual class members, the basis for their alleged

10 injuries and the parties purportedly responsible for those

11 injuries are the same.  The proposed class therefore meets the

12 typicality requirement.

13                  d.   Adequacy of Representation

14         To resolve the question of adequacy, the court must

15 consider two factors: (1) whether the named plaintiff and her

16 counsel have any conflicts of interest with other class members,

17 and (2) whether the named plaintiff and her counsel will

18 vigorously prosecute the action on behalf of the class.  In re

19 Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 566 (9th Cir.

20 2019).

21                  i.   Conflicts of Interest

22         There do not appear to be any conflicts of interest for

23 purposes of preliminary approval.  The named plaintiff's

24 interests are generally aligned with those of the putative class

25 members, who suffered injuries similar to those suffered by the

26 named plaintiff.  See Amchem, 521 U.S. at 625-26 ("[A] class

27 representative must be part of the class and possess the same

28 interest and suffer the same injury as the class members.").

1    The settlement provides for $5,000 incentive awards for

2  the three lead plaintiffs and $500 for each remaining named

3  plaintiff.  (Settlement Agreement ¶ 1.13.)  While the provision

4  of an incentive award raises the possibility that the named

5  plaintiff's interest in receiving that award will cause their

6  interests to diverge from the class's interest in a fair

7  settlement, the Ninth Circuit has specifically approved the award

8  of "reasonable incentive payments."  <u>Staton</u>, 327 F.3d at 977-78.

9  The court, however, must "scrutinize carefully the awards so that

10 they do not undermine the adequacy of the class representatives."

11 <u>Radcliffe v. Experian Info. Sys., Inc.</u>, 715 F.3d 1157, 1163 (9th

12 Cir. 2013).

13    Courts have found that "a $5,000 incentive award is

14 'presumptively reasonable' in the Ninth Circuit."  <u>See</u> <u>Roe v.</u>

15 <u>Frito-Lay, Inc.</u>, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D.

16 Cal. Apr. 7, 2017); <u>see also</u> <u>Hopson v. Hanesbrands Inc.</u>, 08-cv-

17 0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (citing

18 <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 463 (9th Cir.

19 2000)); <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal.

20 2008) (Shubb, J.).  Here, the incentive awards are either $500 or

21 $5,000, placing them within the range typically deemed reasonable

22 within the Ninth Circuit.

23    The settlement results in an average of $46.52 to be

24 distributed to each class member.  The court recognizes that this

25 is significantly less than the proposed $5,000 and $500 incentive

26 awards.  However, incentive awards "are intended to compensate

27 class representatives for work done on behalf of the class, to

28 make up for financial or reputational risk undertaken in bringing

1  the action, and, sometimes, to recognize their willingness to act

2  as a private attorney general." Rodriguez v. West Publ'g Corp.,

3  563 F.3d 948, 958-59 (9th Cir. 2009).  Indeed, the Ninth Circuit

4  has consistently recognized incentive awards are "fairly typical"

5  way to "compensate class representatives for work done on behalf

6  of the class" or "to make up for financial or reputational risk

7  undertaken in bringing the action." Id.  Plaintiff's counsel

8  represents that the named plaintiff has expended significant time

9  participating in this case and has exposed herself to

10  reputational and professional risks by tying her name to a class

11  action lawsuit against her former employer.  (Wasserman Decl. ¶¶

12  56-58.)  The incentive payments thus appear appropriate at this

13  stage.  However, counsel should present further evidence of the

14  efforts of all class representatives receiving incentive awards

15  at final approval.

16                    ii.  Vigorous Prosecution

17            The second portion of the adequacy inquiry examines the

18  vigor with which the named plaintiff and her counsel have pursued

19  the class's claims.  "Although there are no fixed standards by

20  which 'vigor' can be assayed, considerations include competency

21  of counsel and, in the context of a settlement-only class, an

22  assessment of the rationale for not pursuing further litigation."

23  Hanlon, 150 F.3d at 1021.

24            Here, class counsel appear to be experienced employment

25  and class action litigators fully qualified to pursue the

26  interests of the class.  (See Wasserman Decl. ¶¶ 62-64; Decl. of

27  Shawn Sassooness ("Sassooness Decl.") (Docket No. 44-2) ¶ 3.)

28  This experience, coupled with the work performed thus far (see

1    Wasserman Decl. ¶¶ 3-10; Sassooness Decl. ¶¶ 4-8), suggest that

2    class counsel are well-equipped to handle this case.  Further,

3    plaintiff's counsel seem to have conducted thorough factual

4    investigation and legal research, and fully considered the

5    strengths and weaknesses of this case in deciding to accept the

6    terms of the proposed settlement agreement.  (See Wasserman Decl.

7    ¶¶ 7-10; Sassooness Decl. ¶¶ 7-8.)  The court finds no reason to

8    doubt that plaintiff's counsel is well qualified to conduct the

9    proposed litigation and assess the value of the settlement.

10   Accordingly, the court concludes that Rule 23(a)'s adequacy

11   requirement is satisfied for the purpose of preliminary approval.

12              2.   Rule 23(b)

13             After fulfilling the threshold requirements of Rule

14   23(a), the proposed class must satisfy the requirements of one of

15   the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

16   Plaintiff seeks certification under Rule 23(b)(3), which provides

17   that a class action may be maintained only if (1) "the court

18   finds that questions of law or fact common to class members

19   predominate over questions affecting only individual members" and

20   (2) "that a class action is superior to other available methods

21   for fairly and efficiently adjudicating the controversy."  Fed.

22   R. Civ. P. 23(b)(3).

23                  a.   Predominance

24             "The predominance analysis under Rule 23(b)(3) focuses

25   on 'the relationship between the common and individual issues' in

26   the case and 'tests whether proposed classes are sufficiently

27   cohesive to warrant adjudication by representation.'"  Wang, 737

28   F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).

1   As discussed above, the claims brought by the proposed

2   settlement class all arise from defendant's same conduct with

3   respect to wage and hour policies for hourly-paid and non-exempt

4   employees.  The class claims thus demonstrate a "common nucleus

5   of facts and potential legal remedies" that can properly be

6   resolved in a single adjudication.  See Hanlon, 150 F.3d at 1022.

7   Although there are differences in the facts pertaining to

8   individual class members and the amount of injury sustained,

9   there is no indication that those variations are "sufficiently

10  substantive to predominate over the shared claims."  See Murillo,

11  266 F.R.D. at 476 (quoting Hanlon, 150 F.3d at 1022).

12  Accordingly, the court finds common questions of law and fact

13  predominate over questions affecting only individual class

14  members.

15          b.   Superiority

16  Rule 23(b)(3) sets forth four non-exhaustive factors

17  that courts should consider when examining whether "a class

18  action is superior to other available methods for fairly and

19  efficiently adjudicating the controversy."  Fed. R. Civ. P.

20  23(b)(3).  They are: "(A) the class members' interests in

21  individually controlling the prosecution or defense of separate

22  actions; (B) the extent and nature of any litigation concerning

23  the controversy already begun by or against class members; (C)

24  the desirability or undesirability of concentrating the

25  litigation of the claims in the particular forum; and (D) the

26  likely difficulties in managing a class action."  Id.  The

27  parties settled this action prior to certification, making

28  factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at 477

13

1  (citing Amchem, 521 U.S. at 620).

2       Rule 23(b)(3) is concerned with the "vindication of the
3  rights of groups of people who individually would be without
4  effective strength to bring their opponents into court at all."
5  Amchem, 521 U.S. at 617.  When, as here, class members'
6  individual recovery is relatively modest, the class members'
7  interests generally favor certification.  Zinser v. Accufix Res.
8  Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001).  Further, while
9  similar actions have been filed in other courts, this global
10 settlement disposes of the claims in those cases.  Accordingly,
11 the class action device appears to be the superior method for
12 adjudicating this controversy.

13            3.   Rule 23(c)(2) Notice Requirements

14       If the court certifies a class under Rule 23(b)(3), it
15 "must direct to class members the best notice that is practicable
16 under the circumstances, including individual notice to all
17 members who can be identified through reasonable effort."  Fed.
18 R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and
19 content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.
20 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,
21 417 U.S. 156, 172–77 (1974)).  Although that notice must be
22 "reasonably certain to inform the absent members of the plaintiff
23 class," actual notice is not required.  Silber v. Mabon, 18 F.3d
24 1449, 1454 (9th Cir. 1994) (citation omitted).

25       Plaintiff's counsel has provided the court with a
26 proposed notice to class members.  (See Docket No. 44-3 at 57–
27 62.)  It explains the proceedings, defines the scope of the
28 class, and explains what the settlement provides and how much

14

1   each class member can expect to receive in compensation.  (See

2   id. at 1-5.)  The notice further explains the opt-out procedure,

3   the procedure for objecting to the settlement, and the date and

4   location of the final approval hearing.  (See id. at 5-6.)  The

5   content of the notice therefore satisfies Rule 23(c)(2)(B).  See

6   Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen.

7   Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory

8   if it 'generally describes the terms of the settlement in

9   sufficient detail to alert those with adverse viewpoints to

10  investigate and to come forward and be heard.'") (quoting Mendoza

11  v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

12          The parties have selected Simpluris, Inc. to serve as

13  the Settlement Administrator.  (See Mot. at 1.)  Pursuant to the

14  notice plan, the Settlement Administrator will provide direct

15  mail notice to each class member at his or her last known address

16  based upon defendant's records, performing additional skip traces

17  to locate other mailing addresses as necessary.  (See id. at 23.)

18          The court cautions counsel that a single mailed notice

19  is unlikely to provide sufficient notice.  See Roes, 1-2 v. SFBSC

20  Mgmt., LLC, 944 F.3d 1035, 1045-46 (9th Cir. 2019).  As discussed

21  at the hearing on this motion, the court strongly advises that

22  the Settlement Administrator undertake additional measures

23  "reasonably calculated, under all the circumstances," to apprise

24  all class members of the proposed settlement.  See id. at 1047

25  (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306,

26  315 (1950)).

27          Counsel represented at the hearing on this motion that

28  they would investigate additional notice procedures, which will

1   be implemented prior to the motion for final approval, if

2   available and appropriate.  Given these representations, the

3   court will not deny preliminary approval, notwithstanding its

4   concerns about the parties' notice plan as set forth in the

5   motion for preliminary approval.

6          B.   Preliminary Settlement Approval

7               After determining that the proposed class satisfies the

8   requirements of Rule 23(a) and (b), the court must determine

9   whether the terms of the parties' settlement appear fair,

10  adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon,

11  150 F.3d at 1026.  This process requires the court to "balance a

12  number of factors," including "the strength of the plaintiff's

13  case; the risk, expense, complexity, and likely duration of

14  further litigation; the risk of maintaining class action status

15  throughout the trial; the amount offered in settlement; the

16  extent of discovery completed and the stage of the proceedings;

17  the experience and views of counsel; the presence of a

18  governmental participant; and the reaction of the class members

19  to the proposed settlement."  Hanlon, 150 F.3d at 1026.

20              Because some of these factors cannot be considered

21  until the final fairness hearing, at the preliminary approval

22  stage "the court need only determine whether the proposed

23  settlement is within the range of possible approval," Murillo,

24  266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621

25  n.3 (7th Cir. 1982)), and resolve any "glaring deficiencies" in

26  the settlement agreement before authorizing notice to class

27  members, Ontiveros, 2014 WL 3057506, at *12 (citing Murillo, 266

28  F.R.D. at 478).  This generally requires consideration of

1  "whether the proposed settlement discloses grounds to doubt its

2  fairness or other obvious deficiencies, such as unduly

3  preferential treatment of class representatives or segments of

4  the class, or excessive compensation of attorneys."  <u>Murillo</u>, 266

5  F.R.D. at 479 (quoting <u>West v. Circle K Stores, Inc.</u>, 04-cv-438

6  WBS GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)).

7        Courts often begin by examining the process that led to

8  the settlement's terms to ensure that those terms are "the result

9  of vigorous, arms-length bargaining" and then turn to the

10  substantive terms of the agreement.  <u>See, e.g.</u>, <u>Murillo</u>, 266

11  F.R.D. at 479-80; <u>West</u>, 2006 WL 1652598, at *11-12; <u>In re</u>

12  <u>Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

13  2007) ("[P]reliminary approval of a settlement has both a

14  procedural and a substantive component.").

15        1.  <u>Negotiation of the Settlement Agreement</u>

16        Following months of investigations and informal

17  discovery, the parties engaged in a full-day mediation on

18  September 8, 2022 with an experienced wage and hour mediator.

19  (<u>See</u> Wasserman Decl. ¶¶ 7-8.)  The parties were unable to reach a

20  settlement agreement at that time.  (<u>Id.</u> ¶ 9.)  The mediator

21  facilitated continued negotiations over the next two weeks, and

22  the parties accepted a mediator's proposal on September 22, 2022.

23  (<u>Id.</u>)  Plaintiff's counsel represents that the parties engaged in

24  thorough informal discovery and discussion prior to settlement

25  negotiations, which were adversarial and conducted at arms-

26  length.  (<u>See</u> <u>id.</u> ¶¶ 7, 11.)

27        Given the parties' representation that the settlement

28  reached was the product of arms-length bargaining following

1  thorough informal discovery, the court at this stage does not

2  question that the proposed settlement is the result of informed

3  and non-collusive negotiations between the parties.  See La Fleur

4  v. Med. Mgmt. Int'l, Inc., No. 5:13-cv-00398, 2014 WL 2967475, at

5  *4 (N.D. Cal. June 25, 2014) ("Settlements reached with the help

6  of a mediator are likely non-collusive.").

7             2.   Amount Recovered and Distribution

8             In determining whether a settlement agreement is

9  substantively fair to the class, the court must balance the value

10  of expected recovery against the value of the settlement offer.

11  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve

12  consideration of the uncertainty class members would face if the

13  case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at

14  *14.

15             "In determining whether the amount offered in

16  settlement is fair, the Ninth Circuit has suggested that the

17  Court compare the settlement amount to the parties' 'estimates of

18  the maximum amount of damages recoverable in a successful

19  litigation.'"  Litty v. Merrill Lynch & Co., No. 14-cv-0425 PA

20  PJW, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting In

21  re: Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir.

22  2000), as amended (June 19, 2000)); see also Almanzar v. Home

23  Depot U.S.A., Inc., No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *11

24  (E.D. Cal. July 19, 2022) (citing Rodriguez v. W. Publ'g Corp.,

25  563 F.3d 948, 964 (9th Cir. 2009)) ("In determining whether the

26  amount offered is fair and reasonable, courts compare the

27  proposed settlement to the best possible outcome for the class.")

28             The parties propose a gross settlement amount of

$1,500,000, which includes the following: (1) $5,000 incentive
awards for the three lead plaintiffs and $500 for each remaining
named plaintiff, for a total of $27,000 in plaintiff incentive
awards; (2) maximum attorneys' fees of $500,000, or 33.33% of the
gross settlement amount; (3) settlement administration costs of
approximately $65,000; and (4) $50,000 for PAGA penalties, of
which 75% (i.e., $37,500) will be distributed to the LWDA and the
remaining 25% will be distributed to individual aggrieved
employees.  (See Settlement Agreement ¶¶ 1.5, 1.13, 1.16, 1.21,
1.31; Mot. at 7-9.)  After deduction of the incentive awards,
fees, costs, and the LWDA's share of penalties, the net
settlement amount would be approximately $870,500, to be
distributed to class members pro rata based on their number
workweeks during the class period.  (See id.)

Based on these figures, the average payment per class
member is $46.52.  Plaintiff estimates that the class claims are
worth up to $5,327,023.36.  (See Wasserman Decl. ¶ 43.)
Plaintiff has provided ample facts and calculations in support of
this figure.  (See id. ¶¶ 15-43.)  The portion of the gross
settlement amount allocated to class claims -- $1,450,000 --
constitutes approximately 27.22% of the $5,327,023.36 maximum
valuation.  This amount is comfortably within the range of
percentage recoveries that California courts have found to be
reasonable.  See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-
00062 DAD EPG, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022)
(collecting cases).

Plaintiff faced numerous risks in the litigation,
including proving all elements of the claims, obtaining and

1   maintaining class certification, establishing liability, and the

2   costliness of litigation on these issues.  Investigation

3   uncovered specific factual weaknesses in plaintiff's case,

4   including defendant's use of facially valid timekeeping policies

5   and sophisticated timekeeping software; very low rates of unpaid

6   wages and sick pay based on analyzed payroll records; high rates

7   of meal and rest break premiums actually paid by defendant;

8   facially valid policies for reimbursement of business expenses;

9   significant reimbursements given to class members for cell phone

10  usage; and large amounts of waiting time penalties paid to class

11  members.  (See Wasserman Decl. ¶¶ 17-41.)  Plaintiff's counsel

12  represents that, given the strength of plaintiff's claims and

13  defendant's potential exposure, the settlement and resulting

14  distribution provides a strong result for the class.  (See id. ¶

15  51.)

16          There does not appear to be any "glaring deficiency" in

17  the amount of the common settlement fund reserved for PAGA

18  penalties, see Syed, 2019 WL 1130469, at *7, at least compared to

19  settlements in other wage and hour and PAGA actions, where the

20  parties tend to maximize the total amount of the settlement that

21  is paid to aggrieved employees.  See, e.g., Nen Thio v. Genji,

22  LLC, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) (granting

23  preliminary approval of $10,000 in PAGA penalties out of a total

24  settlement amount of $1,250,000); Garcia v. Gordon Trucking,

25  Inc., No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct.

26  31, 2012) (granting final approval of $10,000 in PAGA penalties

27  out of a total settlement amount of $3,700,000).

28          In light of the risks associated with further litigation

20

1   and the relative strength of defendant's arguments and defenses, the

2   court finds that the value of the settlement is within the range of

3   possible approval such that preliminary approval of the settlement

4   is appropriate.  The court further finds the method of processing

5   class member claims to be adequate, as each class member's

6   individual share of the settlement is proportional to the number of

7   weeks worked for defendant during the time period covered by the

8   Settlement Agreement.

9        Counsel are cautioned that because this settlement was

10  reached prior to class certification, it will be subject to

11  heightened scrutiny for purposes of final approval.  See In re

12  Apple Inc. Device Performance Litig., 50 F.4th 769, 783 (9th Cir.

13  2022).  The recommendations of plaintiff's counsel will not be

14  given a presumption of reasonableness, but rather will be subject

15  to close review.  See id.  The court will particularly scrutinize

16  "any subtle signs that class counsel have allowed pursuit of

17  their own self-interests to infect the negotiations."  See id. at

18  782 (quoting Roes, 944 F.3d at 1043).

19            3.   Attorney's Fees

20        If a negotiated class action settlement includes an

21  award of attorney's fees, that fee award must be evaluated in the

22  overall context of the settlement.  Knisley v. Network Assocs.,

23  312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy

24  Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).

25  The court "ha[s] an independent obligation to ensure that the

26  award, like the settlement itself, is reasonable, even if the

27  parties have already agreed to an amount."  In re Bluetooth

28  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

1      The settlement agreement provides that plaintiff's

2   counsel will seek a fee award not to exceed 33.33% of the gross

3   settlement amount, or $500,000.  (Settlement Agreement ¶ 1.5.)

4   If the court does not approve the fee award in whole or in part,

5   that will not prevent the settlement agreement from becoming

6   effective or be grounds for termination.  (See id.)

7      In deciding the attorney's fees motion, the court will

8   have the opportunity to assess whether the requested fee award is

9   reasonable by multiplying a reasonable hourly rate by the number

10  of hours counsel reasonably expended.  See Van Gerwen v. Gurantee

11  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of

12  this lodestar calculation, the court may consider factors such as

13  the "degree of success" or "results obtained" by plaintiff's

14  counsel.  See Cunningham v. Cnty. of L.A., 879 F.2d 481, 488 (9th

15  Cir. 1988).  If the court, in ruling on the fees motion, finds

16  that the amount of the settlement warrants a fee award at a rate

17  lower than what plaintiff's counsel requests, then it will reduce

18  the award accordingly.  The court will therefore not evaluate the

19  fee award at length here in considering whether the settlement is

20  adequate.

21      IT IS THEREFORE ORDERED that plaintiff's motion for

22  preliminary certification of a conditional settlement class and

23  preliminary approval of the class action and PAGA settlement

24  (Docket No. 44) be, and the same hereby is, GRANTED.

25      IT IS FURTHER ORDERED that plaintiff's request for

26  leave to amend the operative complaint in order to join the named

27  plaintiffs from the other actions covered by this settlement is

28  GRANTED.  Plaintiff has ten days from the date of this Order to

1  file the amended complaint.

2          IT IS FURTHER ORDERED THAT:

3      (1) the following class be provisionally certified for the

4  purpose of settlement:

5          (a) All current and former hourly-paid or non-exempt

6  employees who worked for defendant within the state of California

7  during the time period from October 12, 2019 through November 8,

8  2022;

9      (2) the proposed settlement is preliminarily approved as

10 fair, just, reasonable, and adequate to the members of the

11 settlement class, subject to further consideration at the final

12 fairness hearing after distribution of notice to members of the

13 settlement class;

14     (3) for purposes of carrying out the terms of the settlement

15 only:

16         (a) Dorcas-Cothy Kabasele is appointed as the

17 representative of the settlement class and is provisionally found

18 to be an adequate representative within the meaning of Federal

19 Rule of Civil Procedure 23;

20         (b) the law firms of Mayall Hurley, P.C., SW Employment

21 Law Group, APC, and Lavi & Embrahimian, LLP, are provisionally

22 found to be fair and adequate representatives of the settlement

23 class and are appointed as class counsel for the purposes of

24 representing the settlement class conditionally certified in this

25 Order;

26     (4) Simpluris, Inc. is appointed as the Settlement

27 Administrator;

28     (5) the form and content of the proposed Notice of Class

23

Action Settlement (Docket No. 44-3 at 57-62)) is approved, except to the extent that it must be updated to reflect dates and deadlines specified in this Order;

(6) no later than fifteen (15) calendar days from the date this Order is signed, defendant's counsel shall provide the Settlement Administrator with the following information about each class member: full name; last known address; last known telephone number; dates of employment with defendant as an hourly-paid or non-exempt employee; the number of workweeks worked during the Class Period; the number of workweeks worked during the PAGA Period; Social Security number; and the last known email address;

(7) no later than ten (10) calendar days from the date defendant submits the contact information to the Settlement Administrator, it shall mail a Notice of Class Action Settlement to all members of the settlement class via first class mail.  If a Notice is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator will re-send the Notice to the forwarding address.  If no forwarding address is provided, the Settlement Administrator will attempt to locate a more current address within three (3) business days of receipt of the returned mail;

(8) no later than sixty (60) days from the date Settlement Administrator mails the Notice of Class Action Settlement, though in the case of a re-mailed notice the deadline will be extended by fifteen (15) days, any member of the settlement class who intends to dispute the number of workweeks credited to him or object to, comment upon, or opt out of the settlement shall mail

24

1  written notice of that intent to the Settlement Administrator

2  pursuant to the instructions in the Notice of Class Action

3  Settlement;

4       (9) A final fairness hearing shall be set to occur before

5  this Court on **February 5, 2024 at 1:30 p.m.** in Courtroom 5 of the

6  Robert T. Matsui United States Courthouse, 501 I Street,

7  Sacramento, California, to determine whether the proposed

8  settlement is fair, reasonable, and adequate and should be

9  approved by this court; whether the settlement class's claims

10  should be dismissed with prejudice and judgment entered upon

11  final approval of the settlement; whether final class

12  certification is appropriate; and to consider class counsel's

13  applications for attorney's fees, costs, and an incentive award

14  for the class representative. The court may continue the final

15  fairness hearing without further notice to the members of the

16  class;

17       (10) no later than twenty-eight (28) days before the final

18  fairness hearing, class counsel shall file with this court a

19  petition for an award of attorney's fees and costs.  Any

20  objections or responses to the petition shall be filed no later

21  than fourteen (14) days before the final fairness hearing.  Class

22  counsel may file a reply to any objections no later than seven

23  (7) days before the final fairness hearing;

24       (11) no later than twenty-eight (28) days before the final

25  fairness hearing, class counsel shall file and serve upon the

26  court and defendant's counsel all papers in support of the

27  settlement, the incentive award for the class representative, and

28  any award for attorney's fees and costs;

(12) no later than twenty-eight (28) days before the final fairness hearing, the Settlement Administrator shall prepare, and class counsel shall file and serve upon the court and defendant's counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing (themselves or through counsel) and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed settlement, (b) the requested award of attorney's fees, reimbursement of costs, and incentive award to the class representative, and/or (c) the propriety of class certification. To be heard in opposition at the final fairness hearing, a person must, no later than sixty (60) days from the date the Settlement Administrator mails the Notice of Class Action Settlement, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and counsel for defendant, and (b) file said appearance, objections, papers, and briefs with the court, together with proof of service of all such documents upon counsel for the parties.

Responses to any such objections shall be served by hand or through the mails on the objectors, or on the objector's counsel if there is any, and filed with the court no later than

1    fourteen (14) calendar days before the final fairness hearing.

2    Objectors may file optional replies no later than seven (7)

3    calendar days before the final fairness hearing in the same

4    manner described above.  Any settlement class member who does not

5    make his or her objection in the manner provided herein shall be

6    deemed to have waived such objection and shall forever be

7    foreclosed from objecting to the fairness or adequacy of the

8    proposed settlement, the judgment entered, and the award of

9    attorney's fees, costs, and an incentive award to the class

10   representative unless otherwise ordered by the court;

11       (14) pending final determination of whether the settlement

12   should be ultimately approved, the court preliminarily enjoins

13   all class members (unless and until the class member has

14   submitted a timely and valid request for exclusion) from filing

15   or prosecuting any claims, suits, or administrative proceedings

16   regarding claims to be released by the settlement.

17   Dated:  July 25, 2023

18                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28