1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                ----oo0oo----

11

12   DORCAS-COTHY KABASELE, KATIA        No. 2:21-cv-1639 WBS KJN
     ARRELLANO, ANGEL GONZALEZ, MINDY
13   MIRANDA, SARYNA DE JESUS,
     TATIANA BRENAL, FLOR CRUZ,
14   JULISSA PEREZ, ELISSA PADILLA,      MEMORANDUM AND ORDER RE:
     IAN LAMAR, CLAUDIA BENITEZ,         PLAINTIFFS' MOTION FOR FINAL
15   BRITTNEY HUGHES, GEORGE MADDOX,     APPROVAL OF CLASS ACTION AND
     VICTORIA HENKES, ALLEXANDRA TAN,    PAGA SETTLEMENT AND MOTION
16   DANIELLE QUAID, JERRICA LABIAN,     FOR ATTORNEYS' FEES, COSTS,
     RYAN GUFFEY, KIERSTEN WONG,         AND ENHANCEMENT PAYMENTS
17   BRITTANI HERENA, JANET SANCHEZ,
     BRITTANY SOMMERS, CHEYENNE
18   LOPEZ, TALIA CASTENEDA, NOHELY
     LLAMAS, RHONDA PRICKETT, and
19   DEBBIE HARRISON,[1]

20             Plaintiffs,

21        v.

22   ULTA SALON, COSMETICS &
     FRAGRANCE, INC.; and DOES 1-100,
23   inclusive,

24             Defendants.

25

26

27        [1]    Although the caption on the operative complaint does
     not state as such, plaintiffs assert claims both individually and
28   on behalf of similarly situated Ulta employees.

                                     1

----oo0oo----

Plaintiffs Dorcas-Cothy Kabasele,[2] Angel Gonzalez, Mindy Miranda, Saryna De Jesus, Tatiana Brenal, Flor Cruz, Julissa Perez, Elissa Padilla, Ian Lamar, Claudia Benitez, Brittney Hughes, George Maddox, Victoria Henkes, Allexandra Tan, Danielle Quaid, Jerrica Labian, Ryan Guffey, Kiersten Wong, Brittani Herena, Janet Sanchez, Brittany Sommers, Cheyenne Lopez, Talia Casteneda, Nohely Llamas, Rhonda Prickett, Debbie Harrison, and Katia Arellano, individually and on behalf of similarly situated individuals, brought this putative class action against defendant Ulta Salon, Cosmetics, & Fragrance, Inc. ("Ulta"), alleging violations of California wage and hour laws. (See Fourth Am. Compl. ("FAC") (Docket No. 48).)

This is one of four actions against defendant Ulta covering similar class and PAGA claims. The other actions are Gonzalez v. Ulta Salon Cosmetics & Fragrance, Inc., No. 2:22-cv-00363 AB RAO (C.D. Cal.), a federal class and PAGA action; Arellano v. Ulta Salon, Cosmetics and Fragrance, Inc., No. 5:22-cv-00639 JGB KK (C.D. Cal.), a federal class action; and Arellano v. Ulta Salon, Cosmetics and Fragrance, Inc., No. CIVSB2209151 (San Bernardino Super. Ct.), a state PAGA action.

The settlement disposes of all four actions. All parties agreed to seek settlement approval only in this action; once the settlement receives final approval in this action and all class payments are distributed, counsel in the Gonzalez and Arellano actions (state and federal) will voluntarily dismiss

---

[2]    The court is informed by plaintiff's counsel that the first named plaintiff, Dorcas-Cothy Kabasele, is deceased.

1    their cases.  (See Settlement Agreement (Docket No. 49-5 at 24-

2    59) ¶ 9.8.)

3         Before the court are plaintiffs' motion for final

4    approval of class action settlement (Docket No. 49) and motion

5    for attorneys' fees, costs, and enhancement payments (Docket No.

6    49-4).  Defendant does not oppose the motions.  (See Docket No.

7    50.)

8         The Ninth Circuit has declared a strong judicial policy

9    favoring settlement of class actions.  Class Plaintiffs v. City

10   of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

11   Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

12   ("We put a good deal of stock in the product of an arms-length,

13   non-collusive, negotiated resolution[.]") (citation omitted).

14   Rule 23(e) provides that "[t]he claims, issues, or defenses of a

15   certified class may be settled . . . only with the court's

16   approval."  Fed. R. Civ. P. 23(e).

17        "Approval under 23(e) involves a two-step process in

18   which the Court first determines whether a proposed class action

19   settlement deserves preliminary approval and then, after notice

20   is given to class members, whether final approval is warranted."

21   Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

22   525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

23   § 30.41 (1995)).  This court satisfied step one by granting

24   plaintiffs' unopposed motion for preliminary approval of class

25   action settlement on July 25, 2023.  (Order Granting Prelim.

26   Approval (Docket No. 47).)  Now, following notice to the class

27   members, the court will consider whether final approval is

28   merited by evaluating: (1) the treatment of this litigation as a

                                    3

1   class action and (2) the terms of the settlement.  See Diaz v.

2   Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir.

3   1989).

4   I.   Class Certification

5         The putative class consists of all current and former

6   hourly-paid or non-exempt employees who worked for defendant Ulta

7   within California between October 12, 2019 and November 8, 2022.

8   (Settlement Agreement ¶ 1.6.)

9         To be certified, the putative class must satisfy the

10  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

11  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

12        A.   Rule 23(a)

13        Rule 23(a) restricts class actions to cases where: "(1)

14  the class is so numerous that joinder of all members is

15  impracticable [numerosity]; (2) there are questions of law or

16  fact common to the class [commonality]; (3) the claims or

17  defenses of the representative parties are typical of the claims

18  or defenses of the class [typicality]; and (4) the representative

19  parties will fairly and adequately protect the interests of the

20  class [adequacy of representation]."  See Fed. R. Civ. P. 23(a).

21        In the court's order granting preliminary approval of

22  the settlement, the court found that the putative class satisfied

23  the Rule 23(a) requirements.  (See Order Granting Prelim.

24  Approval at 6-12.)  The court is unaware of any changes that

25  would affect its conclusion that the putative class satisfies the

26  Rule 23(a) requirements, and the parties have not indicated that

27  they are aware of any such developments.  The court therefore

28  finds that the class definition proposed by plaintiffs meets the

1    requirements of Rule 23(a).

2        B.    Rule 23(b)

3            After fulfilling the threshold requirements of Rule

4    23(a), the proposed class must satisfy the requirements of one of

5    the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

6    Plaintiffs seek certification under Rule 23(b)(3), which provides

7    that a class action may be maintained only if (1) "the court

8    finds that questions of law or fact common to class members

9    predominate over questions affecting only individual members" and

10   (2) "that a class action is superior to other available methods

11   for fairly and efficiently adjudicating the controversy."  Fed.

12   R. Civ. P. 23(b)(3).

13           In its order granting preliminary approval of the

14   settlement, the court found that both the predominance and

15   superiority prerequisites of Rule 23(b)(3) were satisfied.

16   (Order Granting Prelim. Approval at 12-14.)  The court is unaware

17   of any changes that would affect its conclusion that Rule

18   23(b)(3) is satisfied.  Because the settlement class satisfies

19   both Rule 23(a) and 23(b)(3), the court will grant final class

20   certification of this action.

21       C.    Rule 23(c)(2) Notice Requirements

22           If the court certifies a class under Rule 23(b)(3), it

23   "must direct to class members the best notice that is practicable

24   under the circumstances, including individual notice to all

25   members who can be identified through reasonable effort."  Fed.

26   R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

27   content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

28   651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

1  417 U.S. 156, 172–77 (1974)).  Although that notice must be

2  "reasonably certain to inform the absent members of the plaintiff

3  class," actual notice is not required.  Silber v. Mabon, 18 F.3d

4  1449, 1454 (9th Cir. 1994) (citation omitted).

5       The notice explains the proceedings, defines the scope

6  of the class, and explains what the settlement provides and how

7  much each class member can expect to receive in compensation.

8  (See Notice of Class Action Settlement (Docket No. 49-2 at 7-12)

9  at 1-5.)  The notice further explains the opt-out procedure, the

10  procedure for objecting to the settlement, and the date and

11  location of the final approval hearing.  (See id. at 5-6.)  The

12  content of the notice therefore satisfies Rule 23(c)(2)(B).  See

13  Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen.

14  Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory

15  if it 'generally describes the terms of the settlement in

16  sufficient detail to alert those with adverse viewpoints to

17  investigate and to come forward and be heard.'") (quoting Mendoza

18  v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

19       The parties selected Simpluris, Inc. to serve as the

20  Settlement Administrator.  (See Settlement Agreement ¶ 1.30.)

21  Defendant timely provided Simpluris with the class contact

22  information and data, which included the name, last known

23  address, Social Security Number, email address, telephone number,

24  and pertinent employment information for each class member.  (See

25  Docket No. 49-2 ¶ 6.)  The class list contained 18,705 members.

26  (Id. ¶ 6.)  The Settlement Administrator updated the mailing

27  addresses using the National Change of Address Database

28  maintained by the U.S. Postal Service.  (Id. ¶ 7.)

1    The Settlement Administrator delivered notice of the

2  settlement via mail on August 18, 2023.  (Id. ¶ 8.)  880 notices

3  were returned as undeliverable.  (Id. ¶ 9.)  For those without a

4  forwarding address, the Settlement Administrator performed a skip

5  trace address search to locate updated addresses.  (Id.)  Of the

6  880 notices returned as undeliverable, 726 notices were remailed

7  to new addresses.  Following these efforts, a total of 154

8  notices were ultimately undeliverable by mail.  (Id.)  Of those

9  154 class members, the Settlement Administrator obtained email

10  addresses for 106 individuals and complete notice via email.

11  (Id.)  This constitutes a 99.74% successful notice rate.  (Id.)

12  The Settlement Administrator received five requests for exclusion

13  and zero objections.  (Id. ¶¶ 11-12.)

14    The court appreciates the thorough efforts taken by the

15  Settlement Administrator to effectuate notice and is satisfied

16  that the notice procedure was "reasonably calculated, under all

17  the circumstances," to apprise all class members of the proposed

18  settlement.  See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

19  1045-46 (9th Cir. 2019).

20  II.  Final Settlement Approval

21    Having determined that class treatment is warranted,

22  the court must now address whether the terms of the parties'

23  settlement appear fair, adequate, and reasonable.  See Fed. R.

24  Civ. P. 23(e)(2).  To determine the fairness, adequacy, and

25  reasonableness of the agreement, Rule 23(e) requires the court to

26  consider four factors: "(1) the class representatives and class

27  counsel have adequately represented the class; (2) the proposal

28  was negotiated at arm's length; (3) the relief provided for the

7

1  class is adequate; and (4) the proposal treats class members

2  equitably relative to each other." Id.  The Ninth Circuit has

3  also identified eight additional factors the court may consider,

4  many of which overlap substantially with Rule 23(e)'s four

5  factors:

6          The strength of the plaintiff's case; the risk,
           expense, complexity, and likely duration of
7          further litigation; the risk of maintaining class
           action status throughout the trial; the amount
8          offered in settlement; the extent of discovery
           completed and the stage of the proceedings; the
9          experience and views of counsel; the presence of
           a governmental participant; and the reaction of
10         the class members to the proposed settlement.

11  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).[3]

12       A.   Adequate Representation

13       The court must first consider whether "the class

14  representatives and class counsel have adequately represented the

15  class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

16          [3]   Because claims under PAGA are "a type of qui tam
17  action" in which an employee brings a claim as an agent or proxy
    of the state's labor law enforcement agencies, the court must
18  also "review and approve" settlement of plaintiff's and other
    class members' PAGA claims along with their class claims. See
19  Cal. Lab. Code § 2669(k)(2); Sakkab v. Luxottica Retail N. Am.,
    Inc., 803 F.3d 425, 435-36 (9th Cir. 2015).
20       Though "PAGA does not establish a standard for evaluating
21  PAGA settlements," Rodriguez v. RCO Reforesting, Inc., No. 2:16-
    CV-2523 WBS DMC, 2019 WL 331159, at *4 (E.D. Cal. Jan. 25, 2019)
22  (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-cv-01293 KJM KJN,
    2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of
23  district courts have applied the eight Hanlon factors, listed
    above, to evaluate PAGA settlements.  See, e.g., Smith, 2018 WL
24  1899912, at *2; Ramirez v. Benito Valley Farms, LLC, No. 16-cv-
    04708 LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017);
25  O'Connor v. Uber Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal.
26  2016).  "Many of these factors are not unique to class action
    lawsuits and bear on whether a settlement is fair and has been
27  reached through an adequate adversarial process."  See Ramirez,
    2017 WL 3670794, at *3.  Thus, the court finds that these factors
28  will also govern its review of the PAGA settlement.  See id.

8

"redundant of the requirements of Rule 23(a)(4) . . . ." <u>Hudson</u>
<u>v. Libre Tech., Inc.</u>, No. 3:18-cv-1371 GPC KSC, 2020 WL 2467060,
at *5 (S.D. Cal. May 13, 2020) (quoting 4 <u>Newberg on Class</u>
<u>Actions</u> § 13:48 (5th ed.)); <u>see also</u> <u>In re GSE Bonds Antitr.</u>
<u>Litig.</u>, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting
similarity of inquiries under Rule 23(a)(4) and Rule
23(e)(2)(A)).

   Because the Court has found that the proposed class
satisfies Rule 23(a)(4) for purposes of class certification, the
adequacy factor under Rule 23(e)(2)(A) is also met.  <u>See</u> <u>Hudson</u>,
2020 WL 2467060, at *5.

  B. <u>Negotiation of the Settlement Agreement</u>

   Prior to settlement negotiations, counsel engaged in
thorough investigation of the claims and informal discovery,
including securing employee records and policy documents,
obtaining declarations from multiple plaintiffs, and retaining an
expert to analyze the documents provided by defendant.  (<u>See</u>
Decl. of Robert J. Wasserman ("Wasserman Decl.") (Docket No. 49-
5) ¶ 7.)

   On September 8, 2022, the parties participated in a
full-day private medication with an experienced wage and hour
class action mediator.  (<u>See</u> <u>id.</u> ¶ 8.)  The parties were unable
to reach a settlement on that day, but continued negotiations
over the next two weeks.  (<u>Id.</u> ¶ 9.)  The parties accepted a
mediator's proposal on September 22, 2022.  (<u>Id.</u>)  The parties
spent several months negotiating the final terms of the
Settlement Agreement, executing the agreement on January 18,
2023.  (<u>Id.</u> ¶ 10.)  Counsel represents that that the settlement

1  negotiations were adversarial and conducted at arms' length.

2  (Id. ¶ 11.)

3       Given that the settlement reached was the product of

4  arms-length bargaining following extensive informal discovery and

5  with the help of an experienced mediator, this factor weighs in

6  favor of final approval.  See La Fleur v. Med. Mgmt. Int'l, Inc.,

7  No. 5:13-cv-00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25,

8  2014) ("Settlements reached with the help of a mediator are

9  likely non-collusive.").  The court is satisfied that the outcome

10 of the negotiations was not infected by counsel's pursuit of

11 their own self-interests.  See In re Apple Inc. Device

12 Performance Litig., 50 F.4th 769, 782 (9th Cir. 2022).

13       C.   Adequate Relief

14       In determining whether a settlement agreement provides

15 adequate relief for the class, the court must "take into account

16 (i) the costs, risks, and delay of trial and appeal; (ii) the

17 effectiveness of any proposed method of distributing relief to

18 the class, including the method of processing class-member

19 claims; (iii) the terms of any proposed award of attorney's fees,

20 including timing of payment; and (iv) any [other] agreement[s]"

21 made in connection with the proposal.  See Fed. R. Civ. P.

22 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-

23 AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

24       The court notes that, in evaluating whether the

25 settlement provides adequate relief, it must consider several of

26 the same factors outlined in Hanlon, including the strength of

27 the plaintiffs' case; the risk, expense, complexity, and likely

28 duration of further litigation; the risk of maintaining class

1    action status throughout the trial; and the amount offered in

2    settlement.  See Hanlon, 150 F.3d at 1026.

3              In determining whether a settlement agreement is

4    substantively fair to class members, the court must balance the

5    value of expected recovery against the value of the settlement

6    offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d

7    1078, 1080 (N.D. Cal. 2007).  When a settlement was reached prior

8    to class certification, it is subject to heightened scrutiny for

9    purposes of final approval.  See In re Apple Inc., 50 F.4th at

10   782.  The recommendations of plaintiffs' counsel will not be

11   given a presumption of reasonableness, but rather will be subject

12   to close review.  See id. at 782-83.  The court will particularly

13   scrutinize "any subtle signs that class counsel have allowed

14   pursuit of their own self-interests to infect the negotiations."

15   See id. at 782 (quoting Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d

16   1035, 1043 (9th Cir. 2019)).

17             The Settlement Agreement provides for a gross

18   settlement amount of $1,500,000, which covers all four actions

19   and includes the following: (1) $5,000 incentive awards for the

20   lead plaintiffs and $500 for each remaining named plaintiff, for

21   a total of $22,000 in plaintiff incentive awards;[4] (2) maximum

22   attorneys' fees of $500,000, or 33.33% of the gross settlement

23   amount, plus reasonable documented costs; (3) settlement

24   administration costs of approximately $65,000; and (4) $50,000

25   for PAGA penalties, of which 75% (i.e., $37,500) will be

26   ───────────────

27        [4]   The incentive awards originally totaled $27,000, but
     this figure has been reduced by the $5,000 that was provided for
     Ms. Kabasele's incentive award, which will be divided among the
28   class members, as explained below.

1  distributed to the Labor and Workforce Development Agency

2  ("LWDA") and the remaining 25% will be distributed to individual

3  aggrieved employees.  (See Settlement Agreement ¶¶ 1.5, 1.13,

4  1.16, 1.21, 1.31.)  The remaining net settlement amount will be

5  distributed to the class members and aggrieved employees based on

6  their number of pay periods.  (See id. ¶¶ 1.18, 6.1-6.3.)

7         Plaintiffs estimate that the claims are worth up to

8  $5,327,023.36.  (See Wasserman Decl. ¶ 45.)  The portion of the

9  gross settlement amount allocated to class claims -- $1,450,000

10  -- constitutes approximately 27.22% of the $5,327,023.36 maximum

11  valuation.  This amount is comfortably within the range of

12  percentage recoveries that California courts have found to be

13  reasonable.  See Cavazos v. Salas Concrete, Inc., No. 1:19-cv-

14  00062 DAD EPG, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022)

15  (collecting cases).

16         Plaintiffs faced numerous hurdles in the litigation,

17  including proving all elements of the claims, obtaining and

18  maintaining class certification, establishing liability, and the

19  costliness of litigation on these issues.  Investigation

20  uncovered specific factual weaknesses in plaintiffs' case,

21  including defendant's use of facially valid timekeeping policies

22  and sophisticated timekeeping software; very low rates of unpaid

23  wages and sick pay based on analyzed payroll records; high rates

24  of meal and rest break premiums actually paid by defendant;

25  facially valid policies for reimbursement of business expenses;

26  significant reimbursements given to class members for cell phone

27  usage; and large amounts of waiting time penalties paid to class

28  members.  (See Wasserman Decl. ¶¶ 17-41.)  Plaintiffs' counsel

1   represents that, given the strength of plaintiffs' claims and

2   defendant's potential exposure, the settlement and resulting

3   distribution provides a strong result for the class.  (See id. ¶

4   52.)

5           In light of the risks associated with further

6   litigation and the relative strength of defendant's arguments,

7   the court finds that the value of the settlement counsels in

8   favor of granting final approval.  The court further finds the

9   method of processing class member claims to be adequate.  Each

10  class member's individual share of the settlement is

11  proportional to the number of pay periods worked for defendant

12  during the time period covered by the Settlement Agreement.  The

13  court is also satisfied that counsel's requested fees are

14  reasonable and support approval of the settlement, which it will

15  address in greater detail below.

16      D.   Equitable Treatment of Class Members

17          Finally, the court must consider whether the Settlement

18  Agreement "treats class members equitably relative to each

19  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the court

20  determines whether the settlement "improperly grant[s]

21  preferential treatment to class representatives or segments of

22  the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

23  484 F. Supp. at 1079.

24          Here, the Settlement Agreement does not improperly

25  discriminate between any segments of the class, as all class

26  members are entitled to monetary relief based on the number of

27  pay periods they spent working for defendants.  (See Settlement

28  Agreement ¶ 6.1.)

1    While the Settlement Agreement allows plaintiffs to
2  seek incentive payments, plaintiffs have submitted evidence
3  documenting their time and effort spent on this case, which, as
4  discussed further below, has satisfied the court that their
5  additional compensation above other class members is justified.
6  See Hudson, 2020 WL 2467060, at *9.  The court therefore finds
7  that the settlement treats class members equitably.  See Fed. R.
8  Civ. P. 23(e)(D).

9        E.    Remaining *Hanlon* Factors

10    In addition to the factors already considered as part
11  of the court's analysis under Rule 23(e)(A)-(D), the court must
12  also examine "the extent of the discovery completed . . ., the
13  presence of government participation, and the reaction of class
14  members to the proposed settlement."  Hanlon, 150 F.3d at 1026.

15    As explained above, counsel engaged in thorough
16  informal discovery.  This factor thus weighs in favor of final
17  approval of the settlement.

18    The seventh Hanlon factor, pertaining to government
19  participation, also weighs in favor of approval.  See Hanlon, 150
20  F.3d at 1026.  Under PAGA, "[t]he proposed settlement [must be]
21  submitted to the [LWDA] at the same time that it is submitted to
22  the court."  Cal. Lab. Code § 2669(k)(2).  As of the date of this
23  order, the LWDA has not sought to intervene or otherwise objected
24  to the PAGA settlement.  This factor therefore weighs in favor of
25  final approval of the settlement.

26    The eighth Hanlon factor, the reaction of the class
27  members to the proposed settlement, also weighs in favor of final
28  approval, as only five of the 18,705 class members requested to

1  be excluded and no class members objected.  See Hanlon, 150 F.3d
2  at 1026.

3         In sum, the four factors that the court must evaluate
4  under Rule 23(e) and the eight Hanlon factors, taken as a whole,
5  weigh in favor of approving the settlement.  The court will
6  therefore grant final approval of the Settlement Agreement.
7  III. Attorneys' Fees

8         Federal Rule of Civil Procedure 23(h) provides, "[i]n a
9  certified class action, the court may award reasonable attorney's
10 fees and nontaxable costs that are authorized by law or by the
11 parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated
12 class action settlement includes an award of attorneys' fees,
13 that fee award must be evaluated in the overall context of the
14 settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th
15 Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443,
16 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an
17 independent obligation to ensure that the award, like the
18 settlement itself, is reasonable, even if the parties have
19 already agreed to an amount."  In re Bluetooth Headset Prod.
20 Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).  "Under the
21 'common fund' doctrine, 'a litigant or a lawyer who recovers a
22 common fund for the benefit of persons other than himself or his
23 client is entitled to a reasonable [attorneys'] fee from the fund
24 as a whole.'"  Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir.
25 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478
26 (1980)).  In common fund cases, the district court has discretion
27 to determine the amount of attorneys' fees to be drawn from the
28 fund by employing either the percentage method or the lodestar

1    method.  Id.  The court may also use one method as a "cross-

2    check[ ]" upon the other method.  See Bluetooth Headset, 654 F.3d

3    at 944.

4         As explained above, the settlement agreement appears to

5    provide adequate recovery for the class members.  Further, the

6    payments will be quickly available to class members without the

7    delay associated with further litigation.

8         Like other complex employment class actions, this case

9    presented both counsel and the class with a risk of no recovery

10   at all, as already discussed above.  Plaintiffs' counsel took on

11   this matter on a contingency basis.  (See Wasserman Decl. ¶ 64.)

12   The nature of contingency work inherently carries risks that

13   counsel will sometimes recovers very little to nothing at all,

14   even for cases that may be meritorious.  See Kimbo v. MXD Group,

15   Inc., No. 2:19-cv-00166 WBS KNJ, 2021 WL 492493, at *7 (E.D. Cal.

16   Feb. 10, 2021).  Where counsel do succeed in vindicating

17   statutory and employment rights on behalf of a class of

18   employees, they depend on recovering a reasonable percentage-of-

19   the-fund fee award to enable them to take on similar risks in

20   future cases.  See id.  Plaintiffs' counsel argues that, in light

21   of the result obtained and substantial risk taken in this case, a

22   $500,000 fee constituting 33.33% of the fund, as requested here,

23   is reasonable.

24        The Ninth Circuit has established 25% of the fund as

25   the "benchmark" award that should be given in common fund cases.

26   Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,

27   1311 (9th Cir. 1990).  As this court has explained, "a review of

28   California cases . . . reveals that courts usually award

16

1 attorneys' fees in the 30-40% range in wage and hour class

2 actions that result in recovery of a common fun[d] under $10

3 million." Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020

4 WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of

5 settlement fund); see also Osegueda v. N. Cal. Inalliance, No.

6 18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,

7 2020) (same).  Given that the requested fee is in line with the

8 typical practice in the Ninth Circuit and in this district, the

9 court agrees that plaintiffs' counsel's requested percentage of

10 the common fund is reasonable.

11      "Calculation of the lodestar, which measures the

12 lawyers' investment of time in the litigation, provides a check

13 on the reasonableness of the percentage award." Vizcaino v.

14 Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

15      Here, a lodestar cross-check confirms the

16 reasonableness of the requested award.  Counsel represent that

17 they have dedicated 738.6 hours of work to these cases.  (See

18 Wasserman Decl. ¶ 72.)  Counsel states that their customary

19 hourly rates in class actions range from $675 to $997.  (See id.

20 ¶ 70; Docket No. 49-6 ¶¶ 17, 19; Docket No. 49-7 ¶ 13.)  The

21 firms specialize in wage and hour matters and class action cases,

22 and counsel represents that comparable hourly rates have been

23 approved by multiple federal and state courts in California.

24 (See Wasserman Decl. ¶¶ 65, 69.)  For purposes of the lodestar

25 calculation, the court will apply the rate at the lower end of

26 the range provided by counsel.  Based on 738.6 hours billed at an

27 hourly rate of $675, the lodestar figure is $498,555.  This

28 figure is nearly identical to the $500,000 award requested, with

1  a multiplier of 1.003, confirming the reasonableness of the

2  requested award.  Cf. Vizcaino, 290 F.3d at 1051 (affirming fee

3  award with lodestar cross-check multiplier of 3.65).

4          Accordingly, the court finds the requested fees to be

5  reasonable and will grant counsel's motion for attorneys' fees.

6  IV.  Costs

7          "There is no doubt that an attorney who has created a

8  common fund for the benefit of the class is entitled to

9  reimbursement of reasonable litigation expenses from that fund."

10 In re Heritage Bond Litig., No. 02-cv-1475, 2005 WL 1594403, at

11 *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that

12 plaintiffs' counsel shall be entitled to recover reasonable,

13 documented litigation costs.  (See Settlement Agreement ¶ 1.5.)

14 Counsel's litigation expenses and costs total $24,667.33, though

15 they only seek $20,000.  (See Wasserman Decl. ¶ 78.)  These

16 expenses include copying and mailing expenses, filing fees,

17 mediation fees, expert fees, and travel expenses.  (See Docket

18 No. 49-5 at 103-05; Docket No. 49-6 at 17-18; Docket No. 49-7 at

19 11.)  The court finds these are reasonable litigation expenses.

20 Therefore, the court will grant class counsel's request for costs

21 in the amount of $20,000.

22 V.  Representative Service Award

23         "Incentive awards are fairly typical in class action

24 cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to

25 compensate class representatives for work done on behalf of the

26 class, to make up for financial or reputational risk undertaken

27 in bringing the action, and, sometimes, to recognize their

28 willingness to act as a private attorney general."  Id. at 958-

1   59.

2          Nevertheless, the Ninth Circuit has cautioned that

3   "district courts must be vigilant in scrutinizing all incentive

4   awards to determine whether they destroy the adequacy of the

5   class representatives . . . ." Radcliffe v. Experian Info.

6   Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In

7   assessing the reasonableness of incentive payments, the court

8   should consider "the actions the plaintiff has taken to protect

9   the interests of the class, the degree to which the class has

10  benefitted from those actions" and "the amount of time and effort

11  the plaintiff expended in pursuing the litigation." Staton, 327

12  F.3d at 977 (citation omitted).  The court must balance "the

13  number of named plaintiffs receiving incentive payments, the

14  proportion of the payments relative to the settlement amount, and

15  the size of each payment." Id.

16         In the Ninth Circuit, an incentive award of $5,000 is

17  presumptively reasonable. Davis v. Brown Shoe Co., Inc., No.

18  1:13-cv-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

19  2015) (citing Harris v. Vector Marketing Corp., No. 08-cv-5198

20  EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting

21  cases)).

22         Plaintiffs seek $5,000 incentive awards for the two

23  lead plaintiffs, Katia Arellano and Angel Gonzalez, and $500 for

24  each remaining named plaintiff.  The efforts of the plaintiffs

25  included interviewing and selecting counsel, providing documents

26  to counsel, providing statements to counsel, reviewing documents

27  and discovery responses, participating in mediation, and

28  reviewing the settlement agreement.  (See Docket Nos. 49-8

1    through 49-31.)  In light of plaintiffs' efforts and the risks

2    incurred in bringing this action, the court finds the requested

3    incentive awards to be reasonable.

4           The settlement originally provided a $5,000 incentive

5    award for Ms. Kabasele.  However, in light of Ms. Kabasele's

6    death, the court orders that her incentive award remain part of

7    the net settlement funds, to be distributed to the class members

8    and aggrieved employees in accordance with the terms of the

9    settlement.  At oral argument, counsel for both sides consented

10   to this arrangement.  The court also considered giving the

11   incentive award to Ms. Kabasele's heirs or dividing it among the

12   other named plaintiffs, but concluded that distributing it among

13   the entire class was the most beneficial for the class.

14   VI.  Conclusion

15          Based on the foregoing, the court will grant final

16   certification of the settlement class and will approve the

17   settlement set forth in the Settlement Agreement as fair,

18   reasonable, and adequate.  The Settlement Agreement shall be

19   binding upon all participating class members who did not exclude

20   themselves.

21          IT IS THEREFORE ORDERED that plaintiffs' unopposed

22   motion for final approval of the parties' class action settlement

23   (Docket No. 49) and motion for attorneys' fees, costs, and

24   enhancement payments (Docket No. 49-4) be, and the same hereby

25   are, GRANTED.

26          IT IS FURTHER ORDERED THAT:

27          (1) Solely for the purpose of this settlement, and

28   pursuant to Federal Rule of Civil Procedure 23, the court hereby

1   certifies the following class: all current and former hourly-paid

2   or non-exempt employees who worked for defendant Ulta within

3   California between October 12, 2019 and November 8, 2022.

4         (2) The court appoints Angel Gonzalez, Mindy Miranda,

5   Saryna De Jesus, Tatiana Brenal, Flor Cruz, Julissa Perez, Elissa

6   Padilla, Ian Lamar, Claudia Benitez, Brittney Hughes, George

7   Maddox, Victoria Henkes, Allexandra Tan, Danielle Quaid, Jerrica

8   Labian, Ryan Guffey, Kiersten Wong, Brittani Herena, Janet

9   Sanchez, Brittany Sommers, Cheyenne Lopez, Talia Casteneda,

10  Nohely Llamas, Rhonda Prickett, Debbie Harrison, and Katia

11  Arellano as class representatives and finds that they meet the

12  requirements of Rule 23;

13        (3) The court appoints the law firms of Mayall Hurley,

14  P.C., SW Employment Law Group, APC, and Lavi & Ebrahimian, LLP,

15  as class counsel and finds that they meet the requirements of

16  Rule 23;

17        (4) The settlement agreement's plan for class notice

18  satisfies the requirements of due process and Rule 23.  The plan

19  is approved and adopted.  The notice to the class complies with

20  Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

21        (5) The court finds that the parties and their counsel

22  took appropriate efforts to locate and inform all class members

23  of the settlement.  Five employees have requested to be excluded

24  from the class.  Given that no class member filed an objection to

25  the settlement, the court finds that no additional notice to the

26  class is necessary;

27        (6) As of the date of the entry of this order,

28  plaintiffs and all class members who have not timely opted out of

1   this settlement hereby do and shall be deemed to have fully,

2   finally, and forever released, settled, compromised,

3   relinquished, and discharged defendants of and from any and all

4   settled claims, pursuant to the release provisions stated in the

5   parties' settlement agreement;

6          (7) Plaintiffs' counsel is entitled to fees in the

7   amount of $500,000, and litigation costs in the amount of

8   $20,000;

9          (8) Simpluris, Inc. is entitled to administration costs

10  in the amount of $65,000;

11         (9)  Plaintiffs Katia Arellano and Angel Gonzalez are

12  entitled to incentive awards in the amount of $5,000, and

13  plaintiffs Mindy Miranda, Saryna De Jesus, Tatiana Brenal, Flor

14  Cruz, Julissa Perez, Elissa Padilla, Ian Lamar, Claudia Benitez,

15  Brittney Hughes, George Maddox, Victoria Henkes, Allexandra Tan,

16  Danielle Quaid, Jerrica Labian, Ryan Guffey, Kiersten Wong,

17  Brittani Herena, Janet Sanchez, Brittany Sommers, Cheyenne Lopez,

18  Talia Casteneda, Nohely Llamas, Rhonda Prickett, and Debbie

19  Harrison are entitled to incentive awards in the amount of $500;

20         (10) $37,500 from the gross settlement amount shall be

21  paid to the California Labor and Workforce Development Agency in

22  satisfaction of defendant's alleged penalties under the Private

23  Attorneys General Act;

24         (11) The remaining settlement funds shall be paid to

25  participating class members and aggrieved employees in accordance

26  with the terms of the Settlement Agreement; and

27         (12) This action is dismissed with prejudice.  However,

28  without affecting the finality of this Order, the court shall

retain continuing jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement with respect to all parties to this action and their counsel of record.

Dated:  February 6, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

23